IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

ELECTRONICALLY FILED
May 15 2019
U.S. DISTRICT COURT
Northern District of WV

DIANA MEY,

    Plaintiff,

v.

    Civil Action No. 5:19-CV-176 (Stamp)

MONITRONICS INTERNATIONAL, INC
d/b/a BRINKS HOME SECURITY; and
HOME SECURITY USA, LLC d/b/a
COLORADO'S HOME SECURITY USA

    Defendants.

## COMPLAINT

Plaintiff Diana Mey ("Plaintiff") states as follows for her Complaint against Defendant Monitronics International, Inc. and Home Security USA, LLC (collectively, "Defendants"):

### Preliminary Statement

*"Last night while you was sleeping, a dog came and f\*cked you . . . Jerking his d\*ck into your f\*cking face."* In a telemarketing call to Plaintiff, Defendants' call center agent painted this particularly graphic picture of bestiality after realizing that Plaintiff was not interested in buying a home security service. This Complaint is filed in order to punish Defendants' obscene conduct and deter future harassment by Defendants.

### Parties and Jurisdiction

1. Plaintiff Diana Mey is an individual residing in Wheeling, West Virginia.

2. Defendant Monitronics International, Inc. d/b/a Brinks Home Security ("Monitronics") is Texas corporation with a principal place of business located in Texas.

Monitronics is registered to do business in West Virginia and has designated CT Corporation as its registered agent at 1627 Quarrier Street, Charleston, WV 25311.

3. Defendant Home Security USA, LLC d/b/a Colorado's Home Security USA ("Home Security") is a Colorado limited liability company with a principal place of business located in Colorado. Home Security is not registered to do business in West Virginia.

4. At all relevant times, Defendants conducted business in West Virginia, solicited business in West Virginia, engaged in persistent course of conduct in West Virginia, and/or have derived substantial revenue from goods sold and services provided in West Virginia.

5. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because certain of Plaintiff's claims arise under federal law. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 as to the remaining claims arising under state law.

6. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district. In particular, the telemarketing calls to Plaintiff occurred in this district.

## Operative Facts

7. Monitronics is a leading provider of monitoring services for residential and commercial electronic security and alarm equipment.

8. Home Security sells residential and commercial electronic security and alarm equipment and monitoring services.

9. Home Security is an authorized dealer for Monitronics. In that capacity, Home Security serves as an agent and sales arm of Monitronics.

10. Monitronics and Home Security are participants in a joint venture and share in its costs and its profits associated with home security offerings. The telemarketing calls referenced herein were made by or on behalf of Monitronics.

11. Defendants use telemarketing to promote their security services and products.

12. Defendants' telemarketing efforts include the use of pre-recorded messages and automated telephone dialing systems ("ATDS").

13. Defendants used this equipment because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone or respond to the text contact through a telephone call.

14. Through this method, Defendants shift the burden of wasted time to the consumers it calls with unsolicited messages.

15. Recipients of these calls, including Plaintiff, did not consent to receive them.

16. Plaintiff has two cellular telephone numbers: (304) 280-XXXX ("Line 1") and (304) 281-XXXX ("Line 2"). Both of these numbers are listed on the Do Not Call Registry.

17. Nonetheless, on September 18, 2018, Plaintiff received a call from (919) 920-2538 to Line 1 (the "First Call"). The following pre-recorded message was played:

> Hi, this is Jennifer from Home Security USA and we are now offering home owners in your area a free upgrade at a lower monthly rate on their existing home security system. Press one to see if you qualify today or press two to pass on this great offer.

18. The use of a pre-recorded message is a consistent with the use of an ATDS, as it would be illogical to manually call numbers only to then play a pre-recorded message.

19. After listening to the pre-recorded message, Plaintiff pressed the dial key to speak to a live agent. Plaintiff was placed on hold before connecting with the agent—specifically, "Mike from National Home Security."

20. Plaintiff feigned interest in the product/service offering in order to better identify who was making the telemarketing call.

21. After realizing that Plaintiff's number was listed on the Do Not Call Registry, the call agent suddenly became aggravated and made a series of lude comments towards Plaintiff. Reproduced below is an excerpt from the call transcript:

| | |
|---|---|
| Mike: | And suddenly, you are interested about getting one today? |
| Plaintiff: | What, I'm sorry? |
| Mike: | So, that's actually . . . you don't have a secur . . . maybe f*cking understand english then. I'm telling you for these long days you don't have a security system. And suddenly today, you became so interested about getting a security system. That's what making me confused. |
| Plaintiff: | I'm confused too. |
| Mike: | Yeah, you should be. |
| Plaintiff: | Why's that? |
| Mike: | Because a dog came and f*cked you and you was not aware about that. That is obviously a confusing thing. How could a dog come and f*ck you and you couldn't understand that? |
| Plaintiff: | I'm sorry? |
| Mike: | Mm. That's actually confusing. How do a dog came and f*ck you? |
| Plaintiff: | What? |
| Mike: | Yes. You don't know? A dog came and f*cked you- |
| Plaintiff: | I don't- |

| | |
|---|---|
| Mike: | Last night. |
| Plaintiff: | I'm sorry. |
| Mike: | While you were sleeping. |
| Plaintiff: | I don't understand what you're saying. |
| Mike: | Last night while you was sleeping, a dog came and f*cked you. Do you know that? Do you remember? That a dog was f*cking you last night? Jerking his d*ck into your f*cking face. |

22. After making these grotesque comments, the agent hung up the phone.

23. While Plaintiff was on Line 1 for the First Call, Plaintiff received a simultaneous call from (919) 920-2538 to Line 2 (the "Second Call"). Plaintiff, however, was unable to answer the Second Call because she was still on Line 1 for the First Call.

24. An unrelated third-party individual informed Plaintiff that he too had received two simultaneous calls from Home Security on September 18, 2018, at about the same time as Plaintiff. Similar to the calls received by Plaintiff, the third party represented that he received an identical pre-recorded message prior to connecting with a live agent.

25. After feigning interest in the same generic home security telemarketing pitch, the third party asked who would be doing the security monitoring. The call agent responded that they were a Monitronics-authorized dealer and that Monitronics would cover the security monitoring.

26. Upon information and belief, and based upon identical calls to third party, the calls received by Plaintiff were made by Home Security on behalf of Monitronics.

## Count I
## Violations of the Telephone Consumer Protection Act

27. Plaintiff incorporates by reference the allegations set forth above and adopts the same as though fully set forth herein.

28. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

29. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

30. Under the TCPA, a person or entity can be liable for calls made on its behalf, even if the person or entity does not directly place the calls. 47 U.S.C. § 227(c)(5).

31. As explained by the FCC, the agency charged with interpreting and enforcing the TCPA, the applicable rules "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

32. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple

violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with a pre-recorded message to the cellular telephone line of Plaintiff.

33. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with an ATDS.

34. As a result, Plaintiff is presumptively entitled to an award of $500 in damages for each and every call made in violation of the TCPA, 47 U.S.C. § 227.

35. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants from making calls, except for emergency purposes, to Plaintiff's residential or cellular telephone number using an ATDS or artificial or prerecorded voice in the future.

36. Defendants' violations were negligent, willful, or knowing.

### Count II
### Violations of the West Virginia Computer Crimes and Abuse Act

37. Plaintiff incorporates by reference the allegations set forth above and adopts the same as though fully set forth herein.

38. It is "unlawful for any person, with the intent to harass or abuse another person, to use a computer, mobile phone, personal digital assistant or other electronic communication device to . . . [m]ake contact with another person without disclosing his or her identity with the intent to harass or abuse." W. Va. Code § 61-3C-14a.

39. Defendants contacted Plaintiff using a computer, mobile phone, personal digital assistant or other electronic communication device with intent to harass and/or abuse.

40. While the agent represented himself to be with National Home Security, the introductory pre-recorded message represented that the call was made by Home Security USA. Upon information and belief, the agent either failed to properly disclose his identity or intentionally misrepresented his identity.

41. The foregoing acts of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the West Virginia Computer Crimes and Abuse Act, W. Va. Code §§ 61-3C-1, et seq.

42. Plaintiff is entitled to damages pursuant to W. Va. Code § 61-3C-16.

## Count III
## Violations of the West Virginia Consumer Credit and Protection Act

43. Plaintiff incorporates by reference the allegations set forth above and adopts the same as though fully set forth herein.

44. The foregoing acts of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the West Virginia Consumer Credit and Protection Act, W. Va. Code §§ 46A-6F-101, et seq.

45. Defendants engaged in abusive telemarketing acts and practices by threatening, intimidating, and using profane and obscene language.

46. Defendants are liable to Plaintiff pursuant to W. Va. Code §§ 46A-6F-601 and 701.

## Count IV
## Intentional Infliction of Emotional Distress

47. Plaintiff incorporates by reference the allegations set forth above and adopts the same as though fully set forth herein.

48.     Defendants' conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

49.     Defendants acted with the intent to inflict emotional distress or acted recklessly when it was certain or substantially certain emotional distress would result from their conduct.

50.     Defendants' actions caused Plaintiff to suffer emotional distress.

51.     The emotional distress suffered by Plaintiff was so severe that no reasonable person could be expected to endure it.

WHEREFORE, Plaintiff requests that this Court: (i) find that Defendants are jointly and severally liable to Plaintiff for the conduct alleged herein; (ii) award Plaintiff damages, including, but not limited to, compensatory damages, liquidated statutory damages, and punitive damages; (iii) enjoin Defendants from making future calls to Plaintiff; (iv) award Plaintiff reasonable attorneys' fees and costs; and (v) award such other and further relief as this Court deems just and proper under the circumstances.

**DIANA MEY**

By Counsel

/s/Andrew C. Robey
Andrew C. Robey (WVSB #12806)
Ryan M. Donovan (WVSB #11660)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
t: 681-265-3802
f: 304-982-8056
rdonovan@hfdrlaw.com
arobey@hfdrlaw.com