UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**DIANA MEY**,

        Plaintiff,

v.                                 **Civil Action No. 5:19-CV-176**
                                                          Judge Bailey

**MONITRONICS INTERNATIONAL,
INC.,** d/b/a Brinks Home Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER DENYING SUMMARY JUDGMENT

Currently pending before this Court is defendant's Motion for Summary Judgement of Defendant, Monitronics International Inc. D/B/A Brinks Home Security [Doc. 50], filed September 8, 2020. The Motion has been fully briefed and is now ripe for decision. For the reasons that follow, the Court will deny the Motion.

## BACKGROUND

This case arises out of telemarketing calls made to phone numbers belonging to plaintiff. According to the Complaint, on September 18, 2018, the plaintiff, Diana Mey, received a call which played a pre-recorded message offering services for home security monitoring; after being connected with a live agent, plaintiff feigned interest in order to identify who was making the call. [Doc. 1 at ¶¶ 17–20]. At some point during the call, after Mey alleges the caller became aware that Mey's number was on the Do Not Call Registry, the caller began to make a series of vulgar comments towards her, as set forth in the Complaint:

| | |
|---|---|
| Mike: | And suddenly, you are interested about getting one today? |
| Plaintiff: | What, I'm sorry? |
| Mike: | So, that's actually . . . you don't have a secur . . . maybe f*cking understand english then.  I'm telling you for these long days you don't have a security system.  And suddenly today, you became so interested about getting a security system.  That's what making me confused. |
| Plaintiff: | I'm confused too. |
| Mike: | Yeah, you should be. |
| Plaintiff: | Why's that? |
| Mike: | Because a dog came and f*cked you and you was not aware about that.  That is obviously a confusing thing.  How could a dog come and f*ck you and you couldn't understand that? |
| Plaintiff: | I'm sorry? |
| Mike: | Mm.  That's actually confusing.  How do a dog came and f*ck you? |
| Plaintiff: | What? |
| Mike: | Yes. You don't know?  A dog came and f*cked you– |
| Plaintiff: | I don't– |
| Mike: | Last night. |
| Plaintiff: | I'm sorry. |
| Mike: | While you were sleeping. |
| Plaintiff: | I don't understand what you're saying. |

> Mike: Last night while you was sleeping, a dog came and f*cked you. Do you know that? Do you remember? That a dog was f*cking you last night? Jerking his d*ck into your f*cking face.

At that point, the caller hung up. [Id. at ¶¶ 21–22]. The plaintiff also received a second call on another line from the same number that she was unable to answer. [Id. at ¶ 23]. On the same day, another individual, Phillip Charvat, received a call from an unidentified number which began with a pre-recorded message identical to the one on the call to Mey; on that call, Charvat was able to speak to an agent who represented that they were a Monitronics dealer and that Monitronics would provide the security monitoring. *See* [Doc. 53 at 6]. Monitronics International, Inc. ("Monitronics"), the defendant in this case, is a provider of monitoring services for residential and commercial security equipment; it uses telemarketing, including pre-recorded messages, to market its services. [Doc. 1 at ¶¶ 7–12].

Based on the calls to Mey, she filed suit in this Court, alleging claims for violations of the Telephone Consumer Protection Act ("TCPA"), violations of the West Virginia Computer Crimes and Abuse Act, violations of the West Virginia Consumer Credit and Protection Act, and intentional infliction of emotional distress ("IIED"). By order dated November 17, 2020, this Court dismissed the TCPA claim as plaintiff consented to dismissal after Monitronics filed a Motion to Dismiss. [Doc. 94].

I.  **Defendant's Motion for Summary Judgment**

On September 8, 2020, Monitronics filed a motion for summary judgment [Doc. 50]. In its memorandum in support, defendant raises four arguments in favor of summary

judgment. First, Monitronics claims it is not responsible for the calls in question. In particular, it contends that there is no evidence to show an agency relationship between the caller and Monitronics. [Doc. 51 at 9–14]. Second, Monitronics argues that, even if plaintiff can establish that Monitronics could be held liable for the calls, the vulgar statements made to Mey fall outside the scope of employment and thus it should not be held vicariously liable for them. [Id. at 14–17]. Third, Monitronics argues that Mey has failed to establish the elements of IIED; in particular, that plaintiff has failed to plead the fourth element of IIED, "that the emotional distress suffered by plaintiff was so severe that no reasonable person could be expected to endure it." [Id. at 17–20]. Fourth, Monitronics argues that it cannot be held vicariously liable for punitive damages. [Id. at 20–22].

## II. Plaintiff's Response

In her response, Mey argues that Monitronics is vicariously liable for the acts of its authorized dealers, and that the calls in this case were made by an authorized dealer. [Doc. 53 at 12–15]. In regard to Monitronics argument as to the scope of employment, Mey argues that the vulgar statements were made to threaten and intimidate Mey and were intended to serve Monitronics' purposes. [Id. at 17–18]. Mey further argues that a jury could reasonably find the elements of IIED were met based on the extreme and outrageous nature of the call. [Id. at 19–20]. Finally, Mey contends that "to the extent that Monitronics or its agent acted with 'actual malice' or 'conscious, reckless and outrageous indifference,' a jury may award punitive damages." [Id. at 21].

## III. Defendants' Reply

On October 14, 2020, Monitronics filed its Reply [Doc. 60]. Although Monitronics addresses several of plaintiff's arguments, of particular interest is its argument that Mey

has failed to offer admissible evidence to show an agency relationship between the callers and Monitronics.  Monitronics contends that the statement made by the unknown caller to Mr. Charvat is inadmissible hearsay; without that, it contends there is no basis for establishing an agency relationship.  [Doc. 60 at 6–8].

## IV.     Plaintiff's Sur-Reply

On October 20, 2020, Mey filed a Motion for Leave to file Sur-Reply [Doc. 63], which this Court granted.  Therein, Mey argues that the statements made by the caller on the Charvat call are admissible as nonhearsay party admissions under Fed. R. Evid. 801(d)(2)(D). [Doc. 65 at 1].

## VI.     Defendant's Sur-Rebbutal

Currently pending before this Court is a Motion to file Surrebuttal, filed by Monitronics [Doc. 67], and an attached Surrebuttal [Doc. 67-1].  The Court will grant this motion.  Therein, Monitronics argues that Mey bears the burden of establishing the admissibility of the statements, in this instance by establishing that the declarant is an agent of Monitronics.  [Doc. 67-1 at 4].  Monitronics contends Mey cannot meet this burden as there is not sufficient evidence independent of the potentially hearsay statement itself.  *See* [Id. at 7].

## **LEGAL STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.

R. Civ. P. 56(c); *see* **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986).  Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  **Anderson**, 477 U.S. at 250.

Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."  **Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986).  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial.  Fed. R. Civ. P. 56(c); **Celotex Corp.**, 477 U.S. at 323–25; **Anderson**, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  **Anderson**, 477 U.S. at 249 (citations omitted).

## DISCUSSION

First, the Court finds that the recorded statements on the call to Mr. Charvat are admissible.  Under Fed. R. Evid. 801(d)(2)(D), a statement is not hearsay if it is offered against an opposing party and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed."  Here, Mey bears the burden of showing that the caller was more likely than not acting as an agent for Monitronics.  *See*

*Bourjaily v. United States*, 483 U.S. 171, 176 (1987) ("when the preliminary facts relevant to Rule 801(d)(2)(E) are disputed, the offering party must prove them by a preponderance of the evidence.") (the 1997 Amendment to 801(d)(2) extended *Bourjaily* to 801(d)(2)(C) and (D); *see also* *United States v. Richards*, 204 F.3d 177, 202 (5th Cir. 2000) *overruled on other grounds by* *United States v. Cotton*, 535 U.S. 625 (2002); ("The proponent of the evidence must prove the preliminary facts that bring the statement within Rule 801(d)(2)(D), by a preponderance of the evidence.")). The Court may consider the statements themselves in determining whether they meet the requirements of the rule, but there must be other evidence supporting its admissibility. *See Id.*; *Sutton v. Roth, L.L.C.*, 361 F. App'x 543, 547–48 (4th Cir. 2010) ("To introduce a statement under 801(d)(2)(D) the record must reveal "independent evidence establishing the existence of the agency.") (quoting *United States v. Portsmouth Paving Corp.*, 694 F.2d 312, 321 (4th Cir.1982)). In *Sutton*, "that the declarant was wearing a McDonald's uniform, helped fill Sutton's order, and responded to questions about McDonald's while working at a McDonald's restaurant" was sufficient evidence under 801(d)(2)(D) that the declarant was an agent of McDonald's. *Sutton*, 361 F. App'x at 548. Here, the statements themselves, that the caller was an authorized Monitronics dealer and that Monitronics would be doing the security monitoring, combined with the fact that Monitronics purchases alarm monitoring contracts from its authorized dealers, are sufficient to show that the caller was acting as an agent for Monitronics. Accordingly, the statement is not hearsay and is admissible. Further, the Court finds this case is distinguishable from *Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244 (10th Cir. 2013), in which the court determined calls made by the

plaintiff were inadmissible and did not meet the criteria for 801(d)(2)(D).  In *Hansen*, the only "independent" evidence was plaintiff's allegation that the number he called was retrieved from a website, purportedly belonging to defendant, which no longer existed.  *Id*. at 1249–1250.  The plaintiffs there argued that the website in question should be considered "self-authenticating" under Fed. R. Evid. 902(5), an argument which the court rejected.  *Id*.

With the statements from the Charvat call included, the Court finds that there is a dispute of material facts as to whether Monitronics was responsible for the calls; a reasonable jury could find that Monitronics was responsible for the calls to Mey and, accordingly, summary judgment on this issue is not appropriate.

Second, the Court turns to Monitronics' argument that it cannot be held liable for the vulgar statements made to Mey, which it contends would fall outside the scope of employment.  As identified by defendant,

> it may be said that an act is within the course of the employment, if: (1) It is something fairly and naturally incident to the business and (2) it is done while the servant was engaged upon the master's business and is done, although mistakenly or ill-advisedly, with a view to further the master's interests, or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent and personal motive on the part of the servant to do the act upon his own account.

*Foodland v. State ex rel. WV Dep't of Health & Human Res., Bureau of Pub. Health/Women, Infant & Children's (WIC) Supplemental Food Program*, 207 W.Va. 392, 396, 532 S.E.2d 661, 665 (2000) (citation omitted).  Defendant argues that this case is analogous to *Honeycutt v. United States*, 622 F.Supp.2d 350 (S.D. W.Va. 2008).  In *Honeycutt*, the plaintiff forgot to affix a return address label when mailing a package containing "very private and intimate material;" upon returning to do so, she discovered a postal employee "had opened the package and was discussing its contents in a demeaning manner." *Id.* at 351.  The court dismissed plaintiff's FTCA claim, because while the act was done while the postal employee was at work, "[t]he actual act alleged, however, is so obviously motivated by a selfish desire, it would not be reasonable to assume that Mr. Payne opened the plaintiff's package in service to the United States, nor can it be said that Mr. Payne was employed for the purpose of trespassing and invading the privacy of others." *Id*. at 354.

Defendants argue that in the instant case, the caller who made vulgar statements to Mey was acting outside the scope of employment when doing so. [Doc. 51 at 18].  Mey argues, however, that these vulgar threats were made for Monitronics' benefit "in direct response to [the caller's] realization that Ms. Mey intended to identify and hold responsible the parties behind the illegal telemarketing." [Doc. 53 at 3].  Indeed, as defendant points out, Mey has a "lengthy, well-documented, and highly public history of interactions with telemarketers." [Doc. 51 at 18].  Plaintiff argues that "upon learning Ms. Mey's true identity (she originally used a pseudonym), the agent sought to protect himself *and his principal* by intimidating and deterring further investigation by Ms. Mey." [Doc. 53 at 18].  The Court

finds that there are facts from which a jury could accept Mey's argument; unlike in ***Honeycutt***, the defendant here potentially stood to benefit from the caller's vulgar threats, and a jury could find that the caller's actions were done, at least partially, for the benefit of Monitronics.  Thus, summary judgment on this issue is denied.

Third, the Court turns to defendant's argument that summary judgment should be granted on the IIED claim.

> In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, ***Travis v. Alcon Labs., Inc.***, 202 W.Va. 369, 504 S.E.2d 419 (1998).  Here, Monitronics claims that Mey has failed to adequately plead the fourth element, citing, for example, plaintiff's failure to produce records from any health care provider for treatment received as a result of the severe emotional distress.  However, "[s]evere distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed." ***Id***. at 380.  Subjective

testimony can establish severe emotional distress when jurors from their own experience can understand the extent and character of the disagreeable emotions caused by the defendants conduct. ***Tanner v. Rite Aid of W. Virginia, Inc.***, 194 W. Va. 643, 654, 461 S.E.2d 149, 160 (1995). Here, the extreme and outrageous character of the caller's conduct on the call to Mey was such that a reasonable jury could find that the elements of IIED are met.

Finally, as to defendant's argument that it cannot be held liable for punitive damages, the Court declines to grant summary judgment for reasons already discussed above. Monitronics argues that "The actions for which Plaintiff seeks punitive damages were undertaken by an unknown third-party for his own purposes and which [Monitronics] neither authorized or condoned." [Doc. 51 at 22]. As discussed above, there exists a dispute of material fact as to whether the caller was acting within the scope of his employment.

## **CONCLUSION**

For the aforementioned reasons, the Motion for Summary Judgement of Defendant, Monitronics International Inc. D/B/A Brinks Home Security [**Doc. 50**] is hereby **DENIED**. Further, as this Court has considered defendant's surrebuttal in reaching its decision, the Motion for Leave to file Surrebuttal [**Doc. 67**] is hereby **GRANTED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

11

**DATED**: November 19, 2020.

_____
JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE